UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. CURRAN,<br><br>                    Plaintiff,<br><br>     vs.<br><br>DAVID L. BERNHARDT,<br>SECRETARY, U.S. DEPARTMENT<br>OF THE INTERIOR;<br><br>                    Defendant. | 5:20-CV-05009-JLV<br><br>MEMORANDUM OPINION AND<br>ORDER GRANTING IN PART AND<br>DENYING IN PART PLAINTIFF'S<br>MOTION TO COMPEL<br><br>[DOCKET NO. 32] |

**INTRODUCTION**

This matter is before the court on Plaintiff Michael Curran's complaint alleging violations of Title VII of the Civil Rights Act of 1964 for discrimination and a hostile work environment based on his race (Caucasian), sex (male), and national origin (American). See Docket No. 1. Jurisdiction is premised on the diverse citizenship of the parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332. This court also has federal-question jurisdiction over the controversy. See 28 U.S.C. § 1331. Now pending is plaintiff's motion to compel defendants to provide discovery responses and motion for attorney's fees. See Docket No. 32. Defendant, David Bernhardt, Secretary of the United States Department of the Interior, opposes this motion. See Docket No. 38. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October

16, 2014, standing order of the Honorable Jeffrey L. Viken, United States District Judge.  See Docket No. 44.

## FACTS

Mr. Curran filed this lawsuit in federal court on September 11, 2019, alleging violations of Title VII of the Civil Rights Act of 1964 for discrimination and a hostile work environment based on his race (Caucasian), sex (male), and national origin (American).  See Docket No. 1.  Mr. Curran alleges that Defendant, David Bernhardt, Secretary of the United States Department of the Interior, discriminated against him and subjected him to a hosile work environment during the course of his employment with the Department of the Interior, Office of Appraisal Services ("the Agency").  Id. at 1-2.

### A.    Underlying Complaint

On November 17, 2014, Mr. Curran was hired by the Agency as a Regional Supervisory Appraiser ("RSA"), GS-1171-14, for the Great Plains Region of the Office of the Special Trustee for American Indians, Office of Appraisal Services, in Rapid City, South Dakota.  Docket No. 1, p. 3.  The following year, Mr. Curran was demoted to Review Appraiser, GS-1171-13, and reassigned from the Great Plains Region in Rapid City, South Dakota, to the Western Region in Phoenix, Arizona.  Id. at 3-4.

Mr. Curran's first-level supervisor was Deborah Lewis, Acting Deputy Director, Office of Appraisal Services, whom Mr. Curran claims is a Native American woman.  Id. at 4.  Mr. Curran's second-level supervisor was Eldred

Lesansee, Director, Office of Appraisal Services, whom Mr. Curran claims is a Native American male.  Id.

Mr. Curran alleges that, from March 2015 through October 2015, Ms. Lewis treated him differently than the other similarly situated RSAs at the Agency by frequently saying negative things about him to other staff and by displaying contentious and unprofessional behavior towards him.  Id. at 4-5. These actions, Mr. Curran alleges, undermined and usurped his leadership, thereby causing a hostile work environment.  Id. at 5.

**B.    Discovery Dispute**

On October 19, 2020, Mr. Curran served his first set of written interrogatories and request for production of documents upon defendant pursuant to Federal Rules of Civil Procedure 33 and 34.  See Docket No. 34-2. On November 17, 2020, defendant notified Mr. Curran's primary counsel that they required additional time to respond to the discovery requests given complications posed by the present pandemic, namely that many witnesses could not easily access relevant information while teleworking.  The parties agreed to a 21-day extension.  See Docket No. 39-1.

On December 8, 2020, defendant requested an additional extension of time to respond to discovery requests, again citing difficulty acquiring information from witnesses who were teleworking, as well as witnesses who had since retired or otherwise left the Agency.  See Docket No. 39-2.  In the same correspondence, defendants indicated they had recently learned that Mr. Curran's primary counsel may have already received over 3,500 documents

through discovery at the administrative level that he had not previously disclosed.  Id.  On December 9, 2020, Mr. Curran's primary counsel agreed to a two-week extension and verified that he did, in fact, have documents in his possession that he had failed to disclose due to an oversight.  Id.  Defendant argues that many of these undisclosed documents are responsive to Mr. Curran's discovery requests.  Docket No. 38, p. 2.

Defendant provided its initial objections and responses to Mr. Curran's discovery requests on December 23, 2020.  See Docket No. 34-3.  Defendant supplemented these disclosures on December 30, 2020, January 11, 2021, and March 1, 2021.  See Docket Nos. 34-4, 34-5 & 34-6.  The discovery period was extended on March 5, 2021, over Mr. Curran's objections, to March 15, 2021, to give defendant additional time to further supplement its initial responses.  See Docket No. 31.  After the discovery period extensions, defendant supplemented its responses for a fourth time on March 8, 2021, a fifth time on March 26, 2021, and a sixth time on April 5, 2021.  See Docket Nos. 34-7, 34-8 & 34-9.  In all, the defendant asserts it has disclosed approximately 9,768 pages of discovery in response to Mr. Curran's discovery requests.  Docket No. 38, p. 2.

However, on March 12, 2021, Mr. Curran sent a notice to defendant identifying its allegedly deficient discovery responses.  See Docket No. 34-1.  In response, defendant sought a "meet-and-confer" teleconference with Mr. Curran's attorneys, which was scheduled for March 25, 2021.  Docket No. 39-7.  During the short, sixteen-minute conference, the parties did not

discuss the specific contents of the deficiency notice and, instead, focused on the timeliness of the deficiency notice and whether defendant was obligated to respond.  Docket No. 33, p. 2; Docket No. 38, p. 3.  This meet-and-confer teleconference proved unsuccessful.

On April 7, 2021, Mr. Curran filed the present motion to compel.  See Docket No. 32.  On April 9, 2021, Mr. Curran's local counsel offered to further discuss the issues raised in the motion to compel, and conduct a second meet-and-confer.  See Docket No. 39-9.  Defendant did not oppose this offer.  Id. Accordingly, the parties held a second meet-and-confer conference by telephone on April 27, 2021.  See Docket Nos. 39-10, 39-11 & 39-12.

During this conference, defendant asserts they provided an explanation for various objections, described the ongoing efforts to respond to particular requests, requested that Mr. Curran's primary counsel explain the relevance of particular requests, and asked that some requests be narrowed.  Docket No. 38, p. 4.  Defendant also asserts that Mr. Curran's primary counsel agreed to narrow interrogatory no. 8 to the Great Plains Region, to exclude information related to federal employee benefits, to narrow requests for production nos. 15-17 to exclude medical information, and requested that responses referencing materials already in Mr. Curran's possession be re-phrased to include a reference to broad categories of materials.  Id.

Also during this second meet-and-confer, the parties agreed that defendant would produce a privilege log related to the defendant's litigation hold policy, which would include a list of individuals who received a litigation

5

hold in the course of the present litigation.  Id. at 5.  Later on, a protective

order was filed on May 21, 2021.  See Docket No. 43.  The motion is now fully

briefed and ripe for decision.

## DISCUSSION

### A.    Standards Governing Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> *Scope in General.*  Unless otherwise limited by court order, the scope of
> discovery is as follows: Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim or defense and
> proportional to the needs of the case, considering the importance of the
> issues at stake in the action, the amount in controversy, the parties'
> relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the
> burden or expense of the proposed discovery outweighs its likely benefit.
> Information within the scope of discovery need not be admissible in
> evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an

evasive or incomplete response is made, the party requesting the discovery is

entitled to move for a motion compelling disclosure after having made a good-

faith effort to resolve the dispute by conferring first with the other party.  See

FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  See 8

Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2007 (3d ed.

Oct. 2020 update).  The reason for the broad scope of discovery is that

"[m]utual knowledge of all the relevant facts gathered by both parties is

essential to proper litigation.  To that end, either party may compel the other to

6

disgorge whatever facts he has in his possession." Id. (quoting Hickman v. Taylor, 329 U.S. 495, 507-08 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  But these considerations are not inherent barriers to discovery.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Soc'y, No. 8:03CV165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Woodmen of the World, 2007 WL 1217919, at *1 (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe[,] with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Woodmen of the World, 2007 WL 1217919, at *1 (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery.  See FED. R. CIV.

7

P. 26(b)(1).  Additionally, the court may limit the frequency and extent of discovery.  See Fed R. Civ. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

## B.   Mr. Curran's Motion to Compel Is Timely

Defendant argues that Mr. Curran's motion to compel is untimely because the motion was filed after the close of discovery and Mr. Curran failed to "immediately" call to the court's attention any discovery deficiencies once defendant disclosed discovery responses.  See Docket No. 38, pp. 7-8.  This argument is without merit.

Federal Rule of Civil Procedure 37 does not specify a time limit for filing a motion to compel.  See Days Inn Worldwide, Inc. v. Sonia Invs., 237 F.R.D. 395, 396 (N.D. Tex. 2006) (noting that Federal Rule of Civil Procedure 37 provides no deadline for the filing of motions to compel discovery). Nonetheless, "[i]f the moving party has unduly delayed, the court may conclude that the motion is untimely."  8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Fed. Prac. & Pro. § 2285 (2d ed. 1994).

Generally, absent a specific directive in the scheduling order, motions to compel discovery filed *prior* to the discovery deadline have been held timely. Voter v. Avera Brookings Med. Clinic, No. Civ. 06-4129-KES, 2008 WL 4372707, at *1 (D.S.D. Sept. 2008).  But, motions to compel filed *after* the discovery deadline have routinely been found to be untimely.  See Cont'l Indus., Inc. v. Integrated Logistics Sols., 211 F.R.D. 442, 444 (N.D. Okla. 2002) (determining that a motion to compel production of documents, which was filed six months after the discovery deadline and only three weeks before trial, was untimely, and resulted in a waiver of any discovery violations through unreasonable delay).  See also Packman v. Chi. Tribune Co., 267 F.3d 628, 647 (7th Cir. 2001) (finding the district court did not abuse its discretion in denying a motion to compel discovery filed after discovery closed and defendants had filed their summary judgment motion); Ginett v. Fed. Express Corp., No. 97-5481, 1998 WL 777998, at *5 (6th Cir. Oct. 21, 1998) (finding the district court did not abuse its discretion when it denied a motion to compel filed two months after the discovery deadline, because the plaintiff knew of the document at issue long before the discovery deadline); and Suntrust Bank v. Blue Water Fiber, L.P., 210 F.R.D. 196, 200-02 (E.D. Mich. 2002) (determining plaintiff's motion to compel should be denied because the motion was filed approximately two months after discovery cut-off and, although plaintiff knew of the document at issue long before the discovery deadline, plaintiff failed to file a motion at that time).

However, this court addresses this exact issue in its scheduling order. The court's scheduling order states "[m]otions to compel discovery shall be filed no later than fourteen [14] days after the failure of the good faith efforts of the parties to resolve the dispute under D.S.D. LR 37.1". See Docket No. 25, p. 2. The parties held the first meet-and-confer teleconference on March 25, 2021, which proved to be unsuccessful. Docket No. 39-7. Thirteen days after the teleconference, on April 7, 2021, Mr. Curran filed the pending motion to compel. See Docket No. 32.

By upholding defendant's timeliness argument, the court would be, in effect, punishing Mr. Curran for pursuing answers to his discovery requests. Motions to compel are typically dismissed based on timeliness when the movant knows of discovery deficiencies yet delays requesting supplemental responses or seeking court intervention. See Ginett, 1998 WL 777998, at *5; Suntrust Bank, 210 F.R.D. at 200-02. However, in this case, defendant continuously sent discovery supplements to Mr. Curran and additional requests were made shortly afterwards. These supplements came on December 30, 2020, January 11, 2021, March 1, 2021, March 8, 2021, March 26, 2021, and April 5, 2021. See Docket Nos. 34-4, 34-5, 34-6, 34-7, 34-8 & 34-9. The court would not issue a ruling that required plaintiff to file a discovery motion before defendant had even finished supplying the requested discovery. Because this motion was filed within fourteen days after the parties' good-faith efforts to resolve the discovery dispute, this motion is timely pursuant to D.S.D. LR 37.1.

**C.     Joint Protective Order's Effect on Individual Discovery Requests**

In his initial motion, Mr. Curran requested the court to compel defendant to answer interrogatory nos. 2, 3, 8-12, 14-17, and 25, and produce documents responsive to requests for production nos. 1, 3-10, 15, 16, and 17.  Docket No. 33, p. 1.  Since this discovery dispute arose, the parties have filed a joint motion for protective order, which was adopted and entered by the court on May 21, 2021.  See Docket Nos. 41, 42 & 43.  According to Mr. Curran's reply brief, "[t]he Privilege Log that was belatedly provided by Defendant sufficiently responds to Interrogatory No. 14.  As such, that Interrogatory is no longer deficient.  Additionally, at the time this Reply is filed, the parties are discussing a Joint Motion for Protective Order to cover Interrogatory Nos. 8, 12, 15, 16, 17, and Request Nos. 15, 16, and 17.  However, if not ruled upon in this Order, Plaintiff would reserve the right to renew his Motion for these requests, if not fully and completely responded to by Defendant."  See Docket No. 40, p. 1 n.1.

Since the court has now ordered the protective order [Docket No. 43], the motion to compel as to interrogatory nos. 8, 12, 14, 15, 16, and 17, and requests for production of document nos. 15, 16, and 17 is denied as moot.

**D.     Remaining Individual Discovery Requests and Objections**

**1.     Interrogatory No. 2**

This interrogatory asks:

List and describe all verbal counseling's [sic], write-ups, reprimands, suspensions, demotions or any other employment action taken against Plaintiff while employed by Defendant from November 2014 to the

present.  This Interrogatory includes proposed disciplinary action(s) issued to Plaintiff.

See Docket No. 34-2, p. 4.

In response, defendant stated that Mr. Curran is already in possession of all discoverable materials pertaining to this interrogatory.  See Docket No. 38, p. 9.  In Mr. Curran's deficiency notice to defendant, Mr. Curran asserted that "the Interrogatory seeks a description of 'all verbal' conversations regarding employment actions.  Even assuming all relevant emails are produced, reliance upon those emails would be unresponsive."  Docket No. 34-1, p. 2.  The court disagrees.

Mr. Curran has failed to identify what verbal conversations or consultations he believes to be in defendant's possession and what the relevance of any such conversations would be.  Furthermore, Mr. Curran has not cited any legal authority from this district or elsewhere holding that "all verbal" conversations are the proper subject of discovery.  A party's speculation that more discovery exists is not sufficient to compel discovery; the theoretical possibility that more documents exist would render discovery never-ending. See Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp., No. 3:16CV-00024-RGJ-RSE, 2019 WL 1261352, at *16 (W.D. Ky. Mar. 19, 2019) (citing Hubbard v. Potter, 247 F.R.D. 27, 29 (D.D.C. 2008)).  Instead, a moving party must demonstrate that the documents previously produced "permit a reasonable deduction that other documents may exist or did exist and have been destroyed."  Hubbard, 247 F.R.D. at 29.

Furthermore, "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe[,] with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." <u>Woodmen of the World</u>, 2007 WL 1217919, at *1 (citing <u>Cervantes</u>, 464 F.2d at 994). Here, Mr. Curran has not argued, with *any* reasonable degree of specificity, what exactly he is asking defendant to provide with this interrogatory. Defendant states they have diligently searched for and produced all responsive information presently known to defendant, and because the Federal Rules of Civil Procuedure impose a continuing obligation to disclose newly discovered material information, there is no additional information that can be compelled at this time. Docket No. 38, p. 10. While descriptions of verbal conversations and consultations regarding employment actions taken against Mr. Curran *may* be relevant, defendant cannot produce them if they do not exist. Mr. Curran's speculation, without more, does not permit the inference that additional documents, or conversations, exist or existed. Therefore, Mr. Curran's motion to compel production of descriptions of "all verbal" conversations is denied.

### 2.    Interrogatory No. 3

This interrogatory asks:

Identify all appraisers, by name, gender, race, national origin and employment date, employed at the Office of Special Trustee for American Indians ("OST") Grand [sic] Plains Region from November 2012 to the present.

<u>See</u> Docket No. 34-2, p. 4.

13

In his deficiency notice to defendant, Mr. Curran asserted that, to date, defendant has not provided any responsive information for this interrogatory. Docket No. 34-1, p. 2.  Defendant's response to this interrogatory was that counsel has been working diligently to acquire responsive information and cites work-related challenges posed by COVID-19 and agency reorganizations causing difficulties in locating personnel to assist in compiling this data. Docket No. 38, p. 11; Docket No. 34-3, p. 3.

This motion to compel was filed on April 7, 2021, and the last supplemental answers the defendant provided to Mr. Curran were served on April 5, 2021, around nine months ago.  In that time, there is no indication in the record that defendant has provided *any* information responsive to interrogatory no. 3.  This is unacceptable.  Defendant has had ample time to compile information or locate personnel to assist in finding relevant information.  While the court understands the challenges posed by the COVID-19 pandemic, it is no excuse to delay any sort of response for nine months. Therefore, defendants are ordered to fully respond to interrogatory 3, and Mr. Curran's motion to compel as to interrogatory no. 3 is granted.

### 3.    Interrogatory No. 9

This interrogatory asks:

Identify all persons, by name and title, with whom Deborah Lewis consulted about issuing a "minimally successful" rating to Plaintiff on his annual appraisal issued for FY 2015.  Identify the date and a summary of that communication.  If the communication was written the document should be produced in lieu of a summary.

See Docket No. 34-2, p. 5.

14

In response, defendant stated that Mr. Curran is already in possession of all discovery material pertaining to this interrogatory and is otherwise unaware of any written communications related to Mr. Curran's minimally successful rating. Docket No. 34-3, p. 4. In Mr. Curran's deficiency notice to defendant, Mr. Curran argues that defendant has only responded to the existence of written communications, but this interrogatory seeks any verbal consultations as well. Docket No. 34-1, p. 3. For the same reasons stated in Section D.1, *supra*, Mr. Curran's motion to compel as to interrogatory no. 10 for verbal consultations is denied.

### 4.    Interrogatory No. 10

This interrogatory asks:

> Identify all persons, by name, title, gender, race and national origin, who consulted about demoting Plaintiff. Identify the date and a summary of that communication. If the communication was written the document should be produced in lieu of a summary.

See Docket No. 34-2, p. 5.

In response, defendant stated that "Plaintiff is already in possession of all discoverable material pertaining to this Interrogatory. Defendant is otherwise unaware of any written communication related to Plaintiff's demotion." Docket No. 34-3, p. 4. In his deficiency notice to defendant, Mr. Curran argued that defendant had only responded to the existence of written communications, but this interrogatory seeks any verbal consultations as well. Docket No. 34-1, p. 4. For the same reasons stated in Section D.1, *supra*, Mr. Curran's motion to compel as to interrogatory no. 10 for verbal consultations is denied.

15

### 5.    Interrogatory No. 11

This interrogatory asks:

Identify all persons, by name, title, gender, race and national origin, who consulted about reassigning Plaintiff.  Identify the date and a summary of that communication.  If the communication was written the document should be produced in lieu of a summary.

<u>See</u> Docket No. 34-2, p. 5.

In response, defendant stated, "Plaintiff is already in possession of all discoverable material pertaining to this Interrogatory.  Defendant is otherwise unaware of any written communication related to Plaintiff's demotion."  Docket No. 34-3, p. 5.  In his deficiency notice to Defendant, Mr. Curran asserted that this response was merely a cut/paste from its response to interrogatory no. 10, the interrogatory did not seek information related to a demotion but rather the reassignment of Mr. Curran, and also seeks any verbal consultations.  Docket No. 34-1, p. 4.  The court agrees in part.

Looking at defendant's response to interrogatory no. 11, it is the exact same response that was given to interrogatory no. 10.  <u>Compare</u> Docket No. 34-3, p. 4, <u>with</u> Docket No. 34-3, p. 5.  This is a nonresponsive answer to Mr. Curran's discovery request.  Therefore, Mr. Curran's motion to compel as to identifying all persons, by name, title, gender, race and national origin, who consulted about *reassigning* Mr. Curran is granted.  However, for the same reasons stated in Section D.1, *supra*, Mr. Curran's motion to compel as to interrogatory no. 10 for verbal consultations is denied.

16

### 6.    Interrogatory No. 25

This interrogatory asks:

Identify Plaintiff's first-level supervisor, by name, title, gender, race and national origin, from November 2014-January 2015 and July 2015.

See Docket No. 34-2, p. 7.

In response, defendant stated, "Plaintiff is already in possession of all discoverable material pertaining to this interrogatory.  Defendant nonetheless restates that Plaintiff's first-level supervisor from November 2014 to January 2015 was Robert Hatfield, and his first-level supervisor in July 2015 was Alex Glade."  Docket No. 34-3, p. 7.  In Mr. Curran's deficiency notice to defendant, Mr. Curran pointed out that defendant's response did not provide the "title, gender, race and national origin" of either Robert Hatfield or Alex Glade. Docket No. 34-1, p. 8.

According to defendant, during one of the meet-and-confer conferences, they pointed Mr. Curran's primary counsel to specific pages within the report of investigation where Mr. Glade provided a signed affidavit with his title, gender, race, and national origin.  See Docket No. 38, p. 13.  Furthermore, defendant asserted they intended to supplement their response to interrogatory 25 to include Mr. Hatfield's race and national origin.  Id.  If both are true, the court believes this would address the deficiencies set forth by Mr. Curran.  However, in his reply brief, Mr. Curran continues to assert that the supplements provided by defendant did not fully address the deficiencies in interrogatory no. 25, among others.  See Docket No. 40, p. 2.  To the extent defendant has not

17

supplemented its response to interrogatory no. 25 to supply the requested

demographic information, Mr. Curran's motion to compel is granted.

### 7.    Request for Production No. 1

This request seeks:

> All statements of possible witnesses, whether written, oral, summarized,
> or otherwise reproduced in any manner, relating to the incident
> described in the Complaint or the defenses raised in the Answer;
> including any such statement referenced in Defendant's answer to
> Interrogatory No. 1.

See Docket No. 34-2, p. 7.

In response, defendant stated, "Plaintiff is already in possession of all

discoverable material pertaining to this Request."  Docket No. 34-3, p. 8.  In

Mr. Curran's deficiency notice to defendant, Mr. Curran argued that this was

merely a boilerplate general objection and defendant should be compelled to

produce documents relevant to request no. 1.  Docket No. 34-1, p. 8.

Defendant has asserted they have provided all known discoverable

material regarding this request and Mr. Curran has failed to explain to the

court specifically what documents are missing.  Without a clear understanding

as to what Mr. Curran is claiming is deficient in the defendant's discovery

productions, it leaves the court speculating as to what is being asked to be

compelled.  As discussed previously, a party's speculation that more discovery

exists is not sufficient.  See Hubbard, 247 F.R.D. at 29.

However, Mr. Curran cites a District of Nebraska case for the proposition

that objecting on the basis that the moving party is already in possession of

documents it now seeks is an insufficient response to requests for production;

a party is required to produce documents in its possession, custody, or control, regardless of whether it believes the requesting party already has the documents.  See Gomez v. Tyson Foods, Inc., No. 8:08CV21, 2012 WL 3111897,*4 (D. Neb. July 31, 2012).  While the District of South Dakota has not addressed this issue, several other districts have affirmed Mr. Curran's argument.  See also Ragan v. Jeffboat, LLC, 149 F. Supp. 2d 1053, 1061 (S.D. Ind. 2001); Walt Disney Co. v. DeFabiis, 168 F.R.D. 281, 284 (C.D. Cal. 1996); Cook v. Rockwell Int'l Corp., 161 F.R.D. 103, 105 (D. Colo. 1995); Fort Washington Res., Inc. v. Tannen, 153 F.R.D. 78, 79 (E.D.Pa. 1994) ("[I]t is not a bar to the discovery of relevant material that the same material may be in the possession of the requesting party or obtainable from another source.").

The court is unable to ascertain which documents defendant argues Mr. Curran already possesses and, importantly, when and from whom Mr. Curran obtained them.  While the court agrees it would be duplicative to compel defendant to re-produce documents it has already provided Mr. Curran, there is no indication whether Mr. Curran obtained the responsive documents from some other source or from defendant in the administrative proceeding. Mr. Curran has a right to receive responsive documents *from defendant in this litigation*, regardless of whether or not he already obtained them elsewhere. But it would be a waste of time, money, and resources to require defendant to re-produce documents it has already produced to Mr. Curran, whether in this litigation or in the preceeding administrative matter.

Accordingly, Mr. Curran's motion to compel as to request for production no. 1 is denied, but defendant is ordered to identify for Mr. Curran the documents (by BATES stamp number) they claim to be responsive to this request.

## 8.    Request for Production No. 3

This request seeks "[c]omplete copies of Defendant's litigation hold policies." See Docket No. 34-2, p. 7.

In response, defendant objected to this request, claiming that it calls for information protected by the attorney work-product doctrine and the attorney-client privilege. Docket No. 34-3, p. 8. In Mr. Curran's deficiency notice to defendant, Mr. Curran reasoned that this was an improper boilerplate objection, that no privilege log had been provided pursuant to Rule 26(b)(5), and the request is not seeking privileged information, but rather a copy of the Agency's litigation hold policies. Docket No. 34-1, p. 9.

According to defendant, during the second meet-and-confer teleconference on April 27, 2021, the parties agreed that defendant would produce a privilege log related to the defendant's litigation hold policy, which would include a list of individuals who received a litigation hold in the course of the present litigation. See Docket No. 38, pp. 13-14. In his reply brief, Mr. Curran argues, "Defendant merely refers Plaintiff to its Privilege Log. The Privilege Log has zero reference to any [litigation hold] policy." Docket No. 40, pp. 2-3. The court agrees with Mr. Curran.

20

Mr. Curran's request for production no. 3 did not ask for a privilege log or for any privileged information—it simply asks for complete copies of defendant's litigation hold policies.  See Docket No. 34-2, p. 7.  Attorney-client privilege only protects "the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice."  Brown Bear v. Cuna Mut. Grp., 266 F.R.D. 310, 317 (D.S.D. 2009).  Additionally, the attorney workproduct doctrine, according to the Eighth Circuit, asks "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.  But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation."  Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 604 (8th Cir. 1997) (citation omitted).  Requesting the litigation hold policies of the Agency does not require invading confidential communications between attorney and client, and defendant has not shown that the policy was prepared for this prospective litigation.  Therefore, defendant's objections are without merit.

Again, the scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2007 (3d ed. Oct. 2020 update).  Requesting the Agency's litigation hold policies fits squarely within the purview of Rule 26(b).  Accordingly, Mr. Curran's motion to compel as to request for production no. 3 is granted.

### 9.    Request for Production No. 4

This request asks for:

> All text messages, electronically stored information . . ., documents, memoranda, notes, correspondence, drafts, and written material of any kind maintained by Deborah Lewis relating to Plaintiff from November 2014 to the present.

See Docket No. 34-2, p. 7.

In response, defendant stated, "Plaintiff is already in possession of all discoverable material pertaining to this Request."  Docket No. 34-3, p. 8.  In his deficiency notice to defendant, Mr. Curran asserted that this was merely a boilerplate general objection and defendant should be compelled to produce documents relevant to request no. 4.  Docket No. 34-1, p. 9.  For the same reasons stated in Section D.7, *supra*, Mr. Curran's motion to compel as to request for production no. 4 is denied, but defendant is ordered to indicate to Mr. Curran which documents (by BATES stamp number) already in Mr. Curran's possession are responsive to this request.

### 10.    Request for Production No. 5

This request seeks:

> All text messages, electronically stored information . . ., documents, memoranda, notes, correspondence, drafts, and written material of any kind maintained by Steve Bottemiller relating to Plaintiff from November 2014 to the present.

See Docket No. 34-2, p. 7.

In response, defendant stated, "Plaintiff is already in possession of all discoverable material pertaining to this Request."  Docket No. 34-3, p. 8.  In his deficiency notice to defendant, Mr. Curran stated that this was merely a

boilerplate general objection and defendant should be compelled to produce documents relevant to request no. 5.  Docket No. 34-1, p. 10.  For the same reasons stated in Section D.7, *supra*, Mr. Curran's motion to compel as to request for production no. 5 is denied, but defendant is ordered to indicate to Mr. Curran which documents (by BATES stamp number) already in Mr. Curran's possession are responsive to this request.

### 11.   Request for Production No. 6

This request seeks:

> All text messages, electronically stored information . . ., documents, memoranda, notes, correspondence, drafts, and written material of any kind maintained by Eldred Lesansee relating to Plaintiff from November 2014 to the present.

See Docket No. 34-2, p. 7

In response, defendant stated, "Plaintiff is already in possession of all discoverable material pertaining to this Request."  Docket No. 34-3, p. 9.  In his deficiency notice to defendant, Mr. Curran reasoned that this was merely a boilerplate general objection and defendant should be compelled to produce documents relevant to request no. 6.  Docket No. 34-1, p. 10.  For the same reasons stated in Section D.7, *supra*, Mr. Curran's motion to compel as to request for production no. 6 is denied, but defendant is ordered to indicate to Mr. Curran which documents (by BATES stamp number) already in Mr. Curran's possession are responsive to this request.

### 12.   Request for Production No. 7

This request seeks:

23

> All documents, electronically stored information . . ., electronic mail
> messages, metadata, memoranda, notes, correspondence, drafts, and
> written material of any kind known by Defendant to relate or refer in any
> way to the allegations made in the Complaint, the defenses raised in the
> Answer, or issues in this litigation.

See Docket No. 34-2, p. 8.

In response, defendant stated, "Plaintiff is already in possession of all discoverable material pertaining to this Request."  Docket No. 34-3, p. 9.  In his deficiency notice to defendant, Mr. Curran reasoned that this was merely a boilerplate general objection and defendant should be compelled to produce documents relevant to request no. 7.  Docket No. 34-1, p. 11.  For the same reasons stated in Section D.7, *supra*, Mr. Curran's motion to compel as to request for production no. 7 is denied, but defendant is ordered to indicate to Mr. Curran which documents (by BATES stamp number) already in Mr. Curran's possession are responsive to this request.

### 13.    Request for Production No. 8

This request seeks:

> All draft and final documents relating to Plaintiff's November 2015
> demotion.

See Docket No. 34-2, p. 8.

In response, defendant stated, "Plaintiff is already in possession of all discoverable material pertaining to this Request."  Docket No. 34-3, p. 9.  In Mr. Curran's deficiency notice to defendant, Mr. Curran reasoned that this was merely a boilerplate general objection and Defendant should be compelled to produce documents relevant to request no. 8.  Docket No. 34-1, p. 11.  For the same reasons stated in Section D.7, *supra*, Mr. Curran's motion to compel as

to request for production no. 8 is denied, but defendant is ordered to indicate

to Mr. Curran which documents (by BATES stamp number) already in

Mr. Curran's possession are responsive to this request.

### 14.    Request for Production No. 9

This request seeks:

All draft and final documents relating to Plaintiff's November 2015
reassignment.

See Docket No. 34-2, p. 8.

In response, defendant stated, "Plaintiff is already in possession of all

discoverable material pertaining to this Request."  Docket No. 34-3, p. 9.  In his

deficiency notice to defendant, Mr. Curran reasoned that this was merely a

boilerplate general objection and defendant should be compelled to produce

documents relevant to request no. 9.  Docket No. 34-1, p. 11-12.  For the same

reasons stated in Section D.7, *supra*, Mr. Curran's motion to compel as to

request for production no. 9 is denied, but defendant is ordered to indicate to

Mr. Curran which documents (by BATES stamp number) already in

Mr. Curran's possession are responsive to this request.

### 15.    Request for Production No. 10

This request seeks:

All draft and final documents relating to Plaintiff's FY 2015 performance
appraisal.

See Docket No. 34-2, p. 8.

In response, defendant stated, "Plaintiff is already in possession of all

discoverable material pertaining to this Request."  Docket No. 34-3, p. 9.  In his

deficiency notice to defendant, Mr. Curran reasoned that this was merely a boilerplate general objection and defendant should be compelled to produce documents relevant to request no. 10.  Docket No. 34-1, p. 12.  For the same reasons stated in Section D.7, *supra*, Mr. Curran's motion to compel as to request for production no. 10 is denied, but defendant is ordered to indicate to Mr. Curran which documents (by BATES stamp number) already in Mr. Curran's possession are responsive to this request.

**E.     Plaintiff's Requests for Sanctions**

Mr. Curran asks the court for an award of attorneys' fees for bringing this motion to compel under Federal Rule of Civil Procedure 37(a)(5)(A).  That rule states:

> (5) *Payment of Expenses; Protective Orders.*
>
>> (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).*  If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:
>>
>>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>>
>>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>>
>>> (iii) other circumstances make an aware of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A).  To satisfy this hearing requirement, the court "can consider such questions on written submissions as well as on oral hearings."

FED. R. CIV. P. 37(a)(4) advisory committee's note to 1993 amendment (regarding Rule 37(a)(4), which has since been renumbered as Rule 37(a)(5)).

Here, the court has granted, in part, Mr. Curran's motion to compel responses to specific discovery requests. Therefore, Mr. Curran meets the first criterion of Rule 37(a)(5)(A). And Mr. Curran first raised the issue of Rule 37 costs and attorneys' fees in his motion to compel. See Docket No. 33, p. 12. Therefore, defendant had an opportunity to be heard when it responded in writing to Mr. Curran's motion. With these requirements satisfied, the court examines whether any of the exceptions outlined in Rule 37(a)(5)(A)(i)-(iii) apply. If none of the exceptions apply, the court must award costs. FED R. CIV. P. 37(a)(5)(A).

First, Mr. Curran must not have filed the motion before attempting in good faith to obtain the disclosure or discovery without court action. Both parties have submitted to the court documentation showing repeated attempts, through multiple meet-and-confer teleconferences, to resolve the discovery disputes without involving the court. Therefore, the court finds that Mr. Curran did not file this motion to compel before attempting in good faith to resolve its discovery disputes with defendant.

Next, the court considers whether defendant's non-disclosure, response, or objection was substantially justified. Defendant argues, "[a] vast amount of the discovery sought by Plaintiff during litigation was already in Plaintiff's possession," and, as a result, many of Mr. Curran's interrogatories and requests for production in the present litigation were cumulative. Docket

No. 38, p. 19.  Thus, requiring defendant to re-disclose matters already in Mr. Curran's possession would be unduly burdensome, inefficient, and unreasonable.  The court agrees.

While this court is compelling defendant to identify (by BATES stamp number) the responsive documents defendant believes Mr. Curran already possesses, this does not mean defendant's objections were without substantial justification.  No District of South Dakota case has compelled this type of disclosure.  Therefore, it was reasonable, and substantially justified, for defendants to object to re-sending documents they believed to already be in Mr. Curran's possession.

Furthermore, many of the other objections defendant's had with Mr. Curran's discovery requests dealt with privacy issues.  Mr. Curran filed his motion to compel on April 7, 2021, defendant responded on April 29, 2021, and Mr. Curran replied on May 12, 2021.  See Docket Nos. 32, 38, 40.  The Joint Protective Order that the parties agreed on was not filed until May 21, 2021. See Docket No. 43.  Therefore, defendant's objections were, similarly, substantially justified—they raised privacy objections to discovery requests at that time because a protective order had not yet been filed.  Accordingly, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A)(ii), an award of attorneys' fees is not warranted.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is hereby:

ORDERED that plaintiff's motion to compel [Docket No. 32] is granted as to interrogatory nos. 3, 11 (as narrowed), and 25 and requests for production no. 3. Defendant shall provide, within 21 days of the date of this order, information and copies of documents responsive to these discovery requests. Plaintiff's motion is denied as to interrogatory nos. 2, 8, 9, 10, 12, 14, 15, 16, and 17 and requests for production nos. 1, 4, 5, 6, 7, 8, 9, 10, 15, 16, and 17. However, defendant is

ORDERED to provide to Mr. Curran within 21 days of the date of this order the BATES stamp numbers of documents already in Mr. Curran's possession that are relevant to the pertinent requests for production as stated more specifically in the body of this opinion. It is further

ORDERED that Plaintiff's motion for costs and attorneys' fees is denied.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely

and specific in order to require review by the district court.  <u>Thompson v. Nix</u>,

897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

    DATED this 10th day of January, 2022.

                        BY THE COURT:

                        VERONICA L. DUFFY
                        United States Magistrate Judge