UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. CURRAN,<br><br>Plaintiff,<br><br>vs.<br><br>DEB HAALAND, Secretary, U.S. Department of the Interior<br><br>Defendant. | 5:20-CV-05009-LLP<br><br><br>MEMORANDUM OPINION AND ORDER ON MOTION FOR ATTORNEY FEES |

Plaintiff, Michael J. Curran ("Plaintiff" or "Curran"), has filed a motion for attorney fees. (Doc. 79.) Curran sued his employer, Deb Haaland, the Secretary of the U.S. Department of the Interior,[1] alleging claims of race, sex and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Plaintiff claimed that he was subjected to a hostile work environment during his employment with the Department of the Interior (Office of Appraisal Services) ("the Agency"), and that he was wrongfully removed from his supervisory position on account of his race, sex and national origin. The background of the case is set forth in the Memorandum Opinion and Order granting in part and denying in part the Agency's motion for summary judgment. (Doc. 76.) After the Court's ruling on the motion for summary judgment, the parties mediated and settled the case, but the parties agreed to have this Court decide the issue of attorney fees and costs.[2]

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party. Deb Haaland became the Secretary of the Department of the Interior on March 16, 2021.

[2] The Agency agreed to pay Plaintiff $55,000, excluding attorney fees and costs. (Doc. 87, ¶ 2.) Of the settlement payment, $25,000 is attributable to back pay, and $30,000 is attributable to non-pecuniary, compensatory damages. (*Id.*)

## DISCUSSION

Under Title VII, the Court is authorized, in its discretion, to award "the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k).[3] It is undisputed that Plaintiff is a prevailing party entitled to an award of costs and reasonable attorney fees in this case.

The starting point in determining reasonable attorney fees is the lodestar calculation: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). There is a strong presumption that the lodestar calculation represents a reasonable fee award. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). After calculating the lodestar, courts may consider the twelve factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[4] However, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

The party seeking attorney fees has the burden to prove that its request for attorney fees is reasonable. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (citing *Hensley*, 461 U.S. at 437). To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433.

The court has "broad discretion" in considering the amount of the fees. *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir.

---

[3] The standards for determining reasonable attorney fees in a Title VII action are the same as those used to determine fee awards under 42 U.S.C. § 1988. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983).

[4] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3 (1983) (citing *Johnson*, 488 F.2d at 717–19).

2012). A district court should use its own knowledge, experience, and expertise in determining the fee to be awarded. *See Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1066–67 (8th Cir. 1989). The Eighth Circuit has explained: "The trial court knows the case best. It knows what the lawyers have done, and how well they have done it. It knows what these efforts are worth. It knows how to balance portions of the case together to reach a just and reasonable award." *Young v. City of Little Rock*, 249 F.3d 730, 737 (8th Cir. 2001). An important factor to consider when evaluating attorney fees is the degree of success the claimant obtained. *Hensley*, 461 U.S. at 436, 440 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988.").

In support of the motion for attorney fees, Plaintiff's lead attorney, A. Marques Pitre ("Pitre"), submitted his own affidavit. (Doc. 80.) The following documents are attached to Pitre's affidavit: A. Marques Pitre resume (Ex.1), Updated Laffey Fee Matrix (Ex. 2); Local Counsel, Gunderson, Palmer, Nelson, Ashmore, LLP's Accounting Statements for $8,220.96 (Composite Ex. 3); John P. Mahoney's Accounting Statements (Composite Ex. 4); Pitre & Associates, LLC's redacted Billing Statements (Ex. 5); Pitre & Associates, LLC redacted Billing Statements for Fee Petition (Ex. 6); and Inflation Calculations (Ex. 7). (Doc. 80.) Plaintiff also filed the following supportive documents with his reply brief: Declaration of Michael Curran (Ex. 1); Pitre & Associates unredacted Billing Statements (Ex. 2); Pitre & Associates 5/25/2003 letter to Curran (Ex. 3); Gunderson, Palmer, Nelson, Ashmore, LLP's billing statements (Ex. 4); Pitre & Associates Pre-bill worksheet (Ex. 5).

Pitre has over 18 years of litigation experience, including 8 years devoted to employment law, representing federal employees before several federal agencies, the Federal Circuit, and various state and federal district courts. (Doc. 80, ¶ 1.) He is the managing partner at his law firm, Pitre and Associates, LLC. (*Id.*) Before starting his firm in 2016, Pitre worked at John P. Mahoney, Esq., Attorney at Law. (*Id.*) Prior to that, he worked for 10 years as a staff attorney in the litigation practice group of Arnold & Porter Kaye Scholer, LLP. (*Id.*)

Pitre attests to the employment law experience of the other lawyers who worked for Plaintiff. John Mahoney has over 29 years of experience "specializing in

3

the representation of federal government and private sector employees, law enforcement officials, unions, and employee associations, as well as over 20 years of experience specializing in the representation of federal agencies, senior executives, managers, supervisors, management associations, and private employers in employment and labor law counseling, litigation, mediation, and arbitration." (Doc. 80, ¶ 11.) Pitre's partner, MacKenzie Coy, has over 17 years of experience in federal labor and employment law. (*Id.* at ¶ 12.) Senior associate, Michelle de Vera, has 16 years of experience, with over 6 years specializing in federal employment law. (*Id.*)

In the present case, Plaintiff seeks attorney fees in the amount of $201,655.50 for litigating the underlying case, $12,517.90 for drafting and filing the initial petition for attorney fees, and $6,714.90 for work on the reply brief in support of attorney fees, for a total attorney fee award of $220,888.30. In addition, Plaintiff seeks $13,351.33 for costs and expenses incurred during the litigation as part of his fee request. The total award requested equals $234,239.63.

Plaintiff's request is based on an hourly rate of $829 for attorneys Pitre, Coy and de Vera, $997 for attorney Mahoney, and $225 for law clerks. These rates are based on the Laffey Matrix, a copy of which is attached as Exhibit 2 to Pitre's affidavit.[5] (Doc. 80-2.) Pitre's affidavit lists employment law cases where his clients

---

[5] Attorney Pitre explains the Laffey Matrix in his affidavit:

> Guidelines for the award of reasonable market hourly rates for attorneys practicing complex civil litigation in the Washington, DC metropolitan area were originally recognized by the United States District Court for the District of Columbia in the case of *Laffey v. Northwest Airlines, Inc.* 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). In *Laffey*, the court ruled that reasonable hourly rates for attorneys practicing complex civil litigation, including EEO litigation, in Washington, DC should be categorized by years in practice and adjusted yearly for inflation. *See id.* Use of an updated Laffey Matrix was implicitly endorsed by the D.C. Circuit in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The D.C. Circuit subsequently stated that parties may rely on the updated Laffey Matrix, as prepared annually by DOJ's United States Attorney's Office for DC, as evidence of prevailing market rates for complex litigation counsel in the Washington, D.C. area. *See DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019).

(Doc. 80, ¶ 20.)

were awarded fees for his and Ms. de Vera's services based on the hourly rates reflected in the Laffey Matrix (Doc. 80, ¶¶ 2-8, 12.) It appears that all of those cases were litigated in the Washington, D.C. area.[6]

Plaintiff suggests an alternative in the event the Court decides not to use the Laffey Matrix rates. The alternative hourly rates requested by Plaintiff are $500 for attorneys Mahoney, Pitre and Coy, $400 for attorney de Vera, and $125 for law clerks. (Doc. 80, ¶ 28.) Plaintiff bases these rates on those approved by this Court for the voting rights attorneys in *Libertarian Party of South Dakota v. Krebs*, 2018 WL 4762966 (D.S.D. Oct. 2, 2018).

Another alternative is suggested in Plaintiff's reply brief. (Doc. 86.) There, Plaintiff refers to the actual hourly rate billed in this case, and he attaches a copy of the unredacted billing statements showing Plaintiff has paid an hourly rate of $455 through $525 for attorney Pitre's services from 2016 to the present. (Doc. 86-2.) Based on the rates Plaintiff has paid during the course of this litigation, Plaintiff argues in favor of the following hourly rates: $525 for Pitre, $495 for Coy, $475 for de Vera, and $175 for law clerks. (Doc. 86, p. 5.)

Defendant does not dispute that Plaintiff is entitled to an award of attorney fees and costs. Defendant argues that Plaintiff's requested amount should be reduced because some of the hours were not reasonably expended, the hourly rates are excessive, and Plaintiff did not obtain full relief on his claims.

**A. Reasonable Hours Expended**

Plaintiff requests payment for the following hours for litigating the underlying case:

| | |
|---|---|
| Mahoney | 1.3 |
| Pitre | 175.30 |
| Coy | 19.4 |
| De Vera | 38.9 |
| Law Clerks | 29.8 |

---

[6] Pitre states that his law firm "is located and customarily practices federal sector EEO law and litigation in Washington, DC." (Doc. 80, ¶ 22.)

   **TOTAL HOURS**   264.7

(Doc. 80, p. 15, ¶ 26.) Plaintiff requests payment for the following hours expended preparing the initial brief in support of the motion for attorney fees:

  Pitre      7.6

  De Vera     <u>7.5</u>

  **TOTAL HOURS**   15.1

(Doc. 80, p. 15-17, ¶ 27.) For preparation of the reply brief, Plaintiff requests attorney fees for these hours:

  Pitre      2.6

  De Vera     <u>5.5</u>

  **TOTAL HOURS**   8.1

(Doc. 86-5.)

  Defendant opposes payment for the following time entries: 1) 8.6 hours expended on the motion to compel; 2) 16.6 hours to prepare an appeal of the Court's decision to deny attorney fees and expenses associated with bringing the motion to compel; 3) 2.7 hours opposing Defendant's motion to dismiss or transfer venue; 4) 5.8 hours opposing Defendant's requests for extensions of time. Thus, Defendant asks the Court to deduct 33.7 hours from Plaintiff's request, allowing reimbursement for approximately 231 hours.

  Plaintiff responds that he partially succeeded on the motion to compel and thus rightfully moved to recover fees under Federal Rule of Civil Procedure 37(a)(5)(A). Plaintiff also explains why he opposed Defendant's requests for extension of deadlines:

> Defendant requested an extension of the discovery deadlines three times and requested another three separate extensions of the deadline to file a dispositive motion, with one request occurring after the deadline to file the dispositive motion had passed. It was imperative that Plaintiff's counsel oppose Defendant's numerous requests for extension as the Plaintiff had been seeking redress regarding his discrimination complaint since its filing on February 26, 2016 (5 years prior), and any further unnecessary delays could have resulted in the inability to obtain critical witness testimony should this case have gone to a trial.

(Doc. 86, p. 3.) If a party prevails overall, "the court should not simply deny fees for particular matters on which the plaintiff did not prevail." *Emery v. Hunt*, 272 F.3d

6

1042, 1047 (8th Cir. 2001) (citing *Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 714 (8th Cir. 1997)). "Any award for time spent on matters on which a plaintiff lost, however, must be reasonable, considering 'the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity.' " *Id.*

Based on this Court's experience, the hours spent on the motion to compel and opposing the requests for extensions of time are reasonable. However, 10.6 hours spent on appealing the order denying attorney fees for the motion to compel are not reasonable and will not be compensated. (3.1 hours for Pitre and 7.5 hours for law clerk "ALO".) And because counsel incorrectly filed this lawsuit in the District of Columbia, the Court will not award fees for the 2.7 hours spent responding to Defendant's motion to dismiss or to transfer the case to South Dakota. (.5 hours for Pitre and 2.2 hours for law clerk "MDL.")

Accordingly, Plaintiff will be awarded fees for 251.4 hours spent litigating the underlying case, 15.1 hours for the initial brief in support of the motion for attorney fees, and 8.1 hours expended on the reply brief, for a total of 274.6 hours.

**B. Reasonable Hourly Rates**

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, the ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (citation and quotation omitted). The hourly rate should also take into account the skill and experience of the lawyers. *See Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) ("In determining whether a fee is reasonable, 'the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates.' ") (citation omitted). In deciding the appropriate rate, "courts may draw on their own experience and knowledge of prevailing market rates." *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005).

In light of the general rule that a reasonable market rate is the ordinary rate for similar work in the community where the case has been litigated, *Moysis*, 278 F.3d at 828, the Court will not base its decision on the Laffey Matrix because it applies specifically to the Washington, DC area. Other courts in the Eighth Circuit

have declined to use the Laffey Matrix in determining a reasonable hourly fee. *See, e.g., Livers v. Kofoed*, 2014 WL 1309616, at *6 (D. Neb. Mar. 31, 2014) ("The rates reflected in the Laffey Matrix may be appropriate for larger cities, but they are not reflective of rates in Omaha, Nebraska."); *Owner-Operator Indep. Driver Ass'n, Inc. v. Dunaski*, 2012 WL 4009333, at *4 (D. Minn. Sept. 12, 2012) (citations omitted) ("[S]imply because the Laffey Matrix is used by the United States Attorney's Office in Washington, D.C. does not mean that its rates are reasonable in the Twin Cities area."); *H.P. v. Knickrehm*, 2005 WL 2261172, at *3 (E.D. Ark. Sept. 16, 2005) (declining to apply the Laffey matrix rate and applying a rate "more reflective of the ordinary rate for similar work in the Little Rock community..."). *See also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("[J]ust because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away.")

Furthermore, the Court notes that even the lower, alternative hourly rates requested by Plaintiff are above the average for South Dakota lawyers ($500 for attorneys Mahoney, Pitre and Coy, and $400 for attorney de Vera). In support of these rates, Plaintiff relies on this Court's decision on attorney fees in *Libertarian Party of South Dakota v. Krebs*, 2018 WL 4762966 (D.S.D. Oct. 2, 2018). The rates approved for attorneys Laughlin McDonald and Stephen Pevar in *Libertarian Party* were higher than this Court normally had approved for experienced counsel given the prevailing rates in South Dakota at that time, but the Court found them reasonable under the circumstances of that particular case. However, those circumstances are not present here.

For example, one of the plaintiffs in *Libertarian Party* contacted at least ten attorneys throughout South Dakota and none would take the case even though she was willing to pay them. Here, Plaintiff Curran admitted that he did not seek a lawyer in South Dakota. (Doc. 86-1, Declaration of Michael Curran.) In *Libertarian Party*, the plaintiffs' South Dakota lawyer, Brendan Johnson, submitted an affidavit stating that he would not have taken the case without the assistance of the ACLU, he was unaware of any South Dakota lawyers who had the expertise of Mr. Pevar and Mr. McDonald in voting rights cases, and it was reasonable for the plaintiffs to

8

seek out-of-state counsel. There is no similar evidence regarding Plaintiff's lawyers in this case.

Approving an hourly rate of $500 for attorney McDonald in *Libertarian Party*, this Court stated, "Mr. McDonald's work before this Court, and his declaration filed in this case, doc. 143, show that he continues to be one of the preeminent voting rights attorneys in the United States with extensive experience in voting rights litigation." *Libertarian Party*, 2018 WL 4762966, at *3. With regard to attorney Pevar and the reasons for approving a $400 hourly rate for him, this Court said:

> Mr. Pevar has an impressive background having filed more than 175 civil rights cases since graduating from the University of Virginia School of Law 47 years ago, arguing one case in the United States Supreme Court, more than thirty appeals in three different United States Courts of Appeals, and numerous cases in other state and federal courts. He was lead counsel in *Libertarian Party v. Kundert*, 579 F. Supp. 735 (D.S.D. 1984). Mr. Pevar's extensive knowledge and experience in the area of civil rights is beyond question. There is not a comparable local lawyer and, therefore, a rate higher than the prevailing rates in South Dakota is appropriate.

*Libertarian Party*, 2018 WL 4762966, at *4. This Court also noted that "Plaintiffs' counsel, possessing exceptional experience, good reputations and strong abilities, obtained an excellent result in a contentious and complex case." *Id.* at *6.

Plaintiff's lawyers in the present case have the experience, skill and ability to obtain good results in employment-related litigation, but they have not demonstrated a national reputation comparable to attorneys McDonald and Pevar in *Libertarian Party*. Simply put, they have not convinced this Court that they merit an hourly rate higher than the average rate of South Dakota lawyers with similar experience and abilities in employment law. *See, e.g., Hendrickson*, 934 F.2d at 164 (affirming rate "comparable to nationally-prominent federal civil rights counsel, rather than local Iowa counsel," because the lawyer was a "recognized national expert in juvenile law").

Plaintiff's lawyers did not provide the Court with any information regarding appropriate South Dakota hourly rates for their work. Defendant submitted affidavits from two South Dakota lawyers, Stephanie Pochop and Phillip Stiles, to support its claim that an hourly rate of $500 is not justified for the lead attorneys in this case. According to Defendant:

> The lead attorney for Plaintiff in this case has less than one third the experience of Attorney Stephanie E. Pochop, who charges $500/hour in the most complex of employment discrimination matters. Pochop Decl. at ¶ 6. Attorney Pitre's experience is far more comparable to the experience of Attorney Phillip R. Stiles, who was admitted to practice one year prior to Attorney Pitre and charges $360/hour for employment discrimination matters in Rapid City. Stiles Decl. at ¶ 1. Accordingly, Defendant respectfully submits that Attorney John Mahoney be compensated for 1.3 hours at $500/hour, Attorney A. Marques Pitre be compensated for 160 hours at $360/hour, Attorneys Michelle de Vera and Mackenzie B. Coy be compensated for 53.5 hours at $255/hour, and law clerks be compensated for 16.2 hours at $125/hour, which represents the reduced rate suggested by Plaintiff's counsel. *See* Docket 80 at p. 16, ¶ 28. This would result in a full-relief award of $73,917.5.

(Doc. 83, pp. 5-6.) In addition to the affidavits from the South Dakota lawyers who were capable of representing Plaintiff, Defendant cited two cases from the District of South Dakota where various South Dakota lawyers obtained jury verdicts in their clients' favor in Title VII cases. In 2009, Judge Schreier awarded attorney fees to those plaintiffs at the rate of $180 per hour. *See Jones v. Nat'l Am. Univ.*, 2009 WL 2005293, at *3-4 (D.S.D. July 8, 2009) (awarding attorney fees at $180/hour following jury verdict in a Title VII case for Rapid City attorney based on his 26 years of practice and experience in state and federal court); *Bishop v. Pennington Cty.*, 2009 WL 1364887, at *6 (D.S.D. May 14, 2009) (awarding attorney fees at $180/hour to three Rapid City lawyers following a jury verdict in a Title VII lawsuit).

Plaintiff has not shown the need for special expertise of counsel from Washington, DC, or that local lawyers were unwilling to handle his case. Based on Defendant's evidence and authority, and on this Court's own knowledge and experience, the Court has reason to believe that well-qualified lawyers were available locally to represent Plaintiff at a lower hourly rate. After reviewing the entire record in this case, the Court concludes that the following hourly rates are reasonable under the circumstances in this particular case: $500 for Mr. Mahoney (agreed to by Defendant, and his experience is somewhat commensurate with Ms. Pochop's), $430 for Mr. Pitre and Ms. Coy (mid-way between Ms. Pochop's $500 hourly rate and Mr. Stiles' $360 hourly rate), $360 for Ms. de Vera (commensurate with Mr. Stiles' hourly rate), and $125 for law clerks (the lower, alternative rate suggested by

Plaintiff and agreed to by Defendant). The Court will use these hourly rates in arriving at the lodestar amount in this case.

The lodestar for the underlying litigation is:

| | | |
|---|---|---|
| Mahoney | 1.3 hours at $500 equals | $650.00 |
| Pitre | 171.7 hours at $430 equals | $73,831.00 |
| Coy | 19.4 hours at $430 equals | $8,342.00 |
| De Vera | 38.9 hours at $360 equals | $14,004.00 |
| Law Clerks | 20.1 hours at $125 equals | $2,512.50 |
| TOTAL HOURS | 251.4     TOTAL FEES | $99,339.50 |

The lodestar for work on the initial brief and related documents in support of the motion for attorney fees is:

| | | |
|---|---|---|
| Pitre | 7.6 hours at $430 equals | $3,268.00 |
| De Vera | 7.5 hours at $360 equals | $2,700.00 |
| TOTAL HOURS | 15.1     TOTAL FEES | $5,968.00 |

For preparation of the reply brief in support of the motion for attorney fees, the lodestar is:

| | | |
|---|---|---|
| Pitre | 2.6 hours at $430 equals | $1,118.00 |
| De Vera | 5.5 hours at $360 equals | $1,980.00 |
| TOTAL HOURS | 8.1     TOTAL FEES | $3,098.00 |

Based on the lodestar, the entire fee award is $108,405.50.

### C. Adjusting Lodestar

Defendant argues that the lodestar should be reduced by 40% because the issues were neither novel nor difficult, the skills required to litigate employment discrimination cases such as this are not unique to out-of-state counsel, and the resulting settlement was a compromise rather than full relief. Defendant asks the Court to consider that summary judgment was granted in its favor on Plaintiff's sex and national origin discrimination claims.

11

The skills required to litigate this case were considered by the Court when determining the lodestar, so no further reduction is necessary on that ground.

Although perhaps this case was not particularly complex, Plaintiff's lawyers achieved a good result for their client by diligently working on his representation and reaching a fair and reasonable settlement. Attorney fees will not be reduced simply because the litigation was not protracted or because Plaintiff's lawyers were able to compromise with a settlement.[7]

Finally, the Court concludes that a downward lodestar adjustment is not warranted to account for the fees incurred in connection with the sex and national origin claims. Though Plaintiff did not prevail on the sex or national origin discrimination claims on summary judgment, in essence he achieved much of what he sought by prevailing on the race discrimination and hostile work environment claims and reaching a satisfactory settlement. In addition, the facts and legal issues involved in establishing all of Plaintiff's claims were interrelated. *See Hensley*, 461 U.S. at 435, 440) (holding that where a lawsuit consists of related claims, a plaintiff who achieves "excellent results . . . should recover a fully compensatory fee," and the "award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit"). All of Plaintiff's claims concerned whether Defendant's treatment of Plaintiff in the workplace and the decision to remove Plaintiff from his supervisory position were discriminatory. Consequently, the Court will not adjust the fee award.

### D. Costs and Expenses

Title VII allows a prevailing plaintiff to recover costs. *See* 42 U.S.C. § 2000e-5(k). A fee-shifting statute such as this allows the court to assess "litigation expenses" that may not otherwise be claimed under the category of attorney fees rather than costs. Such expenses have been described by the Eighth Circuit as "out-of-pocket expenses of the kind normally charged to clients by attorneys." *Pinkham v. Camex, Inc.*, 84 F.3d 292, 295 (8th Cir. 1996) (reasonable out-of-pocket litigation expenses, such as charges for long-distance and fax, messenger, and express mail services were reasonable out-of-pocket expenses of the kind normally

---

[7] The Court does not fault Plaintiff for reserving a ruling on the attorney fee issue rather than settling it during mediation, and no reduction will be made on that basis.

charged to clients by attorneys, and thus should have been included as part of attorney fee award to prevailing party in copyright case); *Grand Electric, LLC v. Int'l Brotherhood of Elec. Workers Local 265*, 2011 WL 6740408, at *12 (D.Neb. Dec. 22, 2011) (including litigation costs and expenses in award of attorney fees in ERISA case).

In his initial brief, Plaintiff requested total costs and expenses of $11,631.06. The details for this amount are listed in the Pitre affidavit and its attachments, and the Court finds them reasonable. (Doc. 80, ¶ 31; Ex. 5, pp. 40-41; Ex. 6.) In its reply brief, Plaintiff requested an additional $1,720.27 for costs and expenses after receiving the September 2023 invoice from local counsel for that amount. (Doc. 86-4.) The total request for costs and expenses is $13,351.33.

Defendant does not challenge as unreasonable any specific cost or expense submitted by Plaintiff. Rather, Defendant argues that, like the attorney fees, the costs and expenses should be decreased by 40%. The Court will not reduce the costs and expenses by 40% for the same reasons it did not reduce the lodestar. After reviewing the costs and expenses submitted by Plaintiff and finding them reasonable, the Court will award the amount requested, for a total of $13,351.33. Accordingly,

**IT IS ORDERED** that Plaintiff's motion for attorney fees and costs (doc. 79) is granted in part, and the Court awards attorney fees to Plaintiff in the amount of $108,405.50, and costs and expenses in the amount of $13,351.33.

Dated this 10th day of January, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

Attest:
Matthew W. Thelen, Clerk